# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

ELLEN KANITZ,

     Plaintiff,                         CASE NO. 03-CV-10180

v.                                   DISTRICT JUDGE DAVID M. LAWSON
                                        MAGISTRATE JUDGE CHARLES E. BINDER

WARDEN HAROLD WHITE,
CORRECTIONS OFFICER M. COOKE,
CORRECTIONS OFFICER SERGEANT
OSBORNE,
HEARING INVESTIGATOR M. FREY, and
HEARING OFFICER T. CRAIG,               **CONSOLIDATED CASES**

     Defendants;

and

GORDON M. BUTLER,                     CASE NO. 03-CV-10322

     Plaintiff,

v.

WARDEN HAROLD WHITE,
CORRECTIONS OFFICER M. COOKE,
CORRECTIONS OFFICER SERGEANT
OSBORNE,
HEARING INVESTIGATOR M. FREY, and
HEARING OFFICER T. CRAIG,

     Defendants.
_____/

# MAGISTRATE JUDGE'S REPORT & RECOMMENDATION ON
# DEFENDANTS' RULE 12(b) MOTION FOR DISMISSAL
# AND RULE 56(b) MOTION FOR SUMMARY JUDGMENT AND
(Dkt. 23 in Case No. 03-10180)
# DEFENDANTS' RULE 56(b) MOTION FOR SUMMARY JUDGMENT
(Dkt. 14 in Case No. 03-10322)

I.   **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that:

– In Case No. 03-10180, Defendants' motion be **DENIED WITHOUT PREJUDICE**;

– In Case No. 03-10322, Defendants' motion be **GRANTED IN PART** and **DENIED IN**

   **PART** as follows:

   – that Defendant Hearing Officer T. Craig be **DISMISSED**;

   – that in all other respects the motion be **DENIED.**

II.   **REPORT**

   A.   **Introduction**

By order of U.S. District Judge David M. Lawson, these consolidated cases were referred to the undersigned Magistrate Judge for pretrial case management pursuant to 28 U.S.C. § 636(b)(1).   (Dkt. 31.)   Prior to the consolidation order, Defendants filed the above-listed dispositive motions.   On February 10, 2004, Plaintiff Kanitz filed a response (Dkt. 25) and on August 30, 2004, Plaintiff Butler filed a response.   (Dkt. 33.)   Defendants filed a combined reply on September 3, 2004.   (Dkt. 34.)   Pursuant to Eastern District of Michigan Local Rule 7.1(e)(1), the motions are ready for Report and Recommendation without oral argument.

   B.   **Factual Background and Summary of Plaintiffs' Claims**

Plaintiff Gordon Butler ("Butler") is incarcerated at the Parnall Correctional Facility in Jackson, Michigan.[1]   On October 5, 2002, his fiancé, Plaintiff Ellen Kanitz ("Kanitz"), visited him for the first time at Parnall.   Plaintiffs state that during the visit, Corrections Officer ("C/O") Mary

---

[1]According to the MDOC website, Butler is a Level I prisoner serving a sentence of 14 months to 4 years for convictions on two counts of assault with a dangerous weapon.

2

Cooke burst into the visiting room and yelled for all to hear, "That's it, your visitation is terminated, you are on tape rubbing this prisoner's crotch with your hand, your visitation is terminated immediately . . . ." (Kanitz Am. Compl., Dkt. 18 at 4.) Plaintiffs protested that the allegation was completely untrue, but another corrections officer, Sergeant Reed Osborne, came out of the control center at the same time and supported Cooke's allegations. The visit was terminated.

Following the incident, Butler was charged through the prison disciplinary system with Sexual Misconduct[2] and Kanitz received a Notice of Proposed Visitor Restriction from MDOC Hearing Investigator M. Frey. Prior to her hearing, Kanitz submitted letters on her behalf, asked that the video tape of the visiting room be produced, and asked that the visiting room officer be called as a witness. In one letter, she expressed her concern that she and Butler had somehow been set up. She recalled that when they first entered the visitor's room that day and sat down, an officer told them they were in an area meant for four people and they would have to move to another area meant for two. They did so. Not long after they moved, however, two other people sat in the place they had just vacated, and no one told that couple to move. In addition, after Kanitz and Butler were seated in the two-person area as directed, another officer came into the room and moved some furniture that was in front of them over to the side, commenting that the furniture was in the wrong spot. Kanitz explained in her pre-hearing correspondence that she wanted to see the video herself because, in hindsight, she suspected they were "targeted," moved,

---

[2]In the MDOC Major Misconduct Report charging Butler with sexual misconduct, Defendant C/O Cooke described the incident as follows:

> Prisoner Butler and his visitor Ellen Kanitz were observed, and recorded, on the visiting room monitor located in the control center with her right hand in between his legs. Butler had his hands on her hand and she was rubbing his crotch area.

(Major Misc. Report, Kanitz Am. Compl. at Ex. 1.)

and the furniture rearranged, all to get them positioned in front of a video surveillance camera. (Corresp., Kanitz Am. Compl. at Exs. 5 & 5A.)

On November 1, 2002, Kanitz's hearing on the proposed visitor restriction was held. Hearing Officer T. Craig refused to allow Kanitz to see the video tape, ruling that it was "confidential" and that permitting Kanitz to view it would "reveal the capabilities of a fixed security camera, thereby compromising the security of the visiting room." (Admin. Hrng. Report, Kanitz Am. Compl. at Ex. 2.) Hearing Officer Craig informed Kanitz that he had viewed the tape, and it "clearly shows your hand firmly up against his crotch. Mr. Butler has two hands over your hand." (*Id.*) Kanitz expressed her belief that they "were targeted because of racial discrimination. I would like to put [on the record] that I am white, and he is black." (*Id.*) Hearing Officer Craig then made the following findings:

> The issue is whether Ms Kanitz did touch Mr Butler's groin area. Ms Kanitz and Mr Butler deny that any such touching occurred. Hearing Officer finds from the statements of Officer Cooke, and Sgt Osborne, and a viewing of the video tape, that Ms Kanitz did place her hand on Mr Butler's groin. Hearing Officer finds per P.D. 05.03.140 that this conduct is prohibited and consequently the proposed visitor restriction is upheld. Noted that Ms Kanitz requested as a witness the visiting room officer. Hearing Officer finds this staff member not a necessary witness as if this staff member would have observed the incident, termination of the visit would have resulted. In addition, the video tape of the incident is the best evidence, and the findings would not be different if the staff member could not verify [whether] the conduct did or did not occur.

(*Id.*) Based upon Defendant Craig's findings, Warden Harold White notified Kanitz that she was permanently restricted from visiting any MDOC facility. (Notice of Permanent Visitor Restriction, Kanitz Am. Compl. at Ex. 4.) In a letter accompanying the notice, Warden White stated that Kanitz's name had been placed on the MDOC restricted visitors list, which is "published in Lansing." (Kanitz Am. Compl. at Ex. 7.) She was also advised of her available appellate remedies.

4

Butler's separate prisoner misconduct hearing was also presided over by Hearing Officer

T. Craig.  Butler likewise was not allowed to view the tape and his request to call the visiting room

officer as a witness was denied.  Hearing Officer Craig made the following findings:

> Hearing Officer finds from the statement on the misconduct report and statement
> from Sgt Osborne, and a viewing of the video tape, that Officer Cooke is credible
> in allegation that Ms Kanitz was rubbing Mr Butler's crotch area, as Sgt Osborne
> states the record button was not pressed at the beginning of the incident, and the
> video available does clearly show Ms Kanitz's hand in Mr Butler's crotch.  Hearing
> Officer finds touching of the crotch of the male to be sexual in nature and done for
> the purpose of the sexual gratification of both parties.

(Maj. Misc. Hrng. Report, Kanitz Am. Compl. at Ex. 3.)  Accordingly, Butler was found guilty of

Sexual Misconduct and was sanctioned to five days of "toplock."[3]  (*Id.*)

Kanitz and Butler both appealed, and both of their requests for rehearing were denied by

Richard B. Stapleton, MDOC Hearings Administrator.  (Kanitz Am. Compl. at Ex. 14; Butler

Compl. at Ex. 3.)  Butler also tried to submit grievances about the incident, but they were rejected

at all steps of the process either on the grounds that inmates are not allowed to file grievances

about issues relating to misconduct charges and hearings or on the grounds of untimeliness.

(Butler Compl. ¶¶ 41-49; grievance docs. attach. to Compl.)  Butler states that during this time he

came up for review before the Michigan Parole Board, but after extensive questioning about his

sexual misconduct conviction, his parole was denied.  (Butler Compl. ¶ 33.)

Kanitz began a letter-writing campaign to senators, the director of the MDOC, several

attorneys, and others regarding the incident and the visitation restriction.  (Kanitz Am. Compl. ¶

34.)  Her letters produced results.  The Office of Legislative Corrections Ombudsman received a

referral to look into the matter from United States Senator Debbie Stabenow, and an investigator

---

[3]"A prisoner on toplock shall not leave his/her cell, room or bunk area for any reason without specific authorization from the appropriate staff person."  MDOC Policy Directive 03.03.105 (VV).

was assigned. The investigator obtained all Parnall records about the incident, including the video

tape. After viewing the video, Chief Investigator Charlene Lowrie forwarded her report to Richard

Stapleton, the MDOC Hearings Administrator who had denied the requests for rehearing, stating

in pertinent part the following:

> The video shows . . . [t]he visitor's hand draped over Butler's leg, not in his crotch. Butler then takes her hand and their hands are together <u>between his knees</u>. Their hands are nowhere near his crotch.
>
> The video does not support Sgt. Osborne's description at 1130 hours when he began recording.
>
> The video does not support the hearing officer's statement.
>
> Ms. Kantiz' hand appears to be relaxed on Butler's leg in the video while the couple is engaged in a conversation, putting into further question Sgt. Osborne and Officer Cooke's statements.
>
> For these reasons, I recommend your consideration for rehearing and dismissal of the misconduct and dismissal of the visitor restriction.

(Lawrie Report, Kanitz Am. Compl. at Ex. 11 (emphasis in original).)

Stapleton reconsidered the requests for rehearings and overturned the misconduct conviction

and the visitor restriction, stating the following:

> Requests for rehearing were first received from the prisoner and the visitor . . . on 10/25/02 and 11/15/02. Their requests were reviewed and disapproved on 12/19/02 and 1/23/03. The previous decision on their requests are reconsidered based on additional argument brought in the prisoner's behalf by the Office of Legislative Corrections Ombudsman. The hearing decisions were clearly based on the hearing officer's reliance on a video recording of the prisoner and visitor in the visiting rooms. The hearing officer found the visitor had placed her hand in the prisoner's groin for the purpose of sexual gratification. The record includes specific reference to the video as showing the visitor's "hand firmly up against his crotch." Rehearing requests were denied in large part based on the hearing officer's representation of what was reflected in the video recording. That recording is now reviewed by the Hearings Administrator at the request of the Chief Investigator of the Office of Legislative Corrections Ombudsman. The Ombudsman's Office is correct that the video reflects only that the "visitor's hand is draped over Butler's leg, not in his crotch." In fact, the video reveals no touching of the prisoner's crotch. The hearing

decisions are therefore overturned and the charge of Sexual Misconduct is dismissed
and the visitor restriction removed.

(Request for Rehearing dated 6/5/03, Kanitz Am. Compl. at Ex. 13.)  All references to the matter

were subsequently expunged from Butler's records.

Kanitz filed her civil rights complaint on August 11, 2003, and Butler's complaint was filed

on November 19, 2003.  Both actions are brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and

1986, and the claims asserted are substantially similar.

Plaintiffs claim that Defendants Cooke and Osborne's "slanderous and libelous words"

displayed deliberate indifference to the truth or falsity of the charges brought against them.

Plaintiffs also allege that Defendants Cooke and Osborne "maliciously and purposely created and

used knowingly false evidence and provided false statements" in violation of Plaintiffs'

constitutional rights, and that such actions were motivated by class-based discriminatory animus.

(Kanitz Am. Compl. ¶¶ 13-16; Butler Compl. ¶¶ 15-16.)  They further allege that these defendants

denied them equal protection under the law, and engaged in a conspiracy to further their goal of

interfering with the exercise of Plaintiffs' rights and privileges.  (*Id.*)  Plaintiff Butler additionally

contends that defendants' actions caused him "atypical and significant hardship when compared

to the ordinary incidents of prison conditions." (Butler Compl. ¶¶ 16, 56.)

With regard to Defendant T. Craig, the hearing officer, Kanitz claims that he deprived her

of her right to procedural and substantive due process by ignoring her letters, refusing to allow her

to see the evidence against her, namely, the video, and by relying on false evidence in finding her

guilty, "when he knew or reasonably should have known of the falsity of the evidence."  Plaintiff

also contends that Defendant Craig's actions were taken in furtherance of a civil conspiracy which

was motivated by racial or otherwise class-based invidiously discriminatory animus in violation

7

of the Equal Protection Clause, with the purpose of depriving Plaintiff of her constitutional due process rights, as well as her First Amendment right to associate with her fiancé.  (Kanitz Am. Compl. ¶¶ 18-21, 50; Butler Compl. ¶¶ 25-27.)

Plaintiffs claim that the Hearings Investigator, Defendant M. Frey, failed to investigate, review, and disclose the false and tainted evidence.  Thus, it is alleged that Defendant Frey not only had personal knowledge of and participated in the conspiracy, but also failed to prevent further constitutional violations when he failed to disclose that the video did not support the charges.  (Kanitz Am. Compl. ¶¶ 27-28, 49; Butler Compl. ¶¶ 17-19.)

Plaintiffs claim that Defendant Warden Harold White "knowingly and with intent, while acting under color of state law, engaged in, ratified, and took overt and covert action in furtherance of the conspiracy" when he sent Plaintiff the Notice of Permanent Visitor Restriction and informed her that she was being placed on the MDOC Visitor Restriction List.  (Kanitz Am. Compl. ¶ 24.) Plaintiffs further claim that the unconstitutional actions of the other four defendants "directly and proximately resulted from policies, practices, customs, and usages, regulations, or decisions maintained, tacitly encouraged, condoned, authorized, and ratified by Defendant White."  (Kanitz Am. Compl. ¶ 37, 42-47; Butler Compl. ¶¶ 57-60.)  In addition, Plaintiffs claim that Defendant Warden White, who was responsible for the training of officers at Parnall, "established and implemented a training program that was specifically deficient in its express or tacit encouragement of oppressive or otherwise class-based invidious discriminations against mixed-race couples," and that this deficiency resulted from Defendant White's deliberate indifference to the rights of persons who come in contact with these officers.  (Kanitz Am. Compl. ¶ 55-56.)

Plaintiffs allege that all of the defendants participated in a conspiracy, that the defendants each took specific overt and covert actions in furtherance of the conspiracy (which are spelled out in detail in the complaints), that the conspiracy infringed upon Plaintiffs' constitutional rights, and that defendants' discriminatory actions were "racially motivated and took issue with the fact that [Butler] is African-American and [Kanitz] is Caucasian." (Butler Compl. at 1; Kanitz Am. Compl. ¶ 48.)

Plaintiffs also assert Michigan state law claims of libel and slander per se, violation of the Fair and Just Treatment Clause of the Michigan Constitution, and intentional infliction of emotional distress. (Kanitz Am. Compl. ¶¶ 57-63; Butler Compl. at 2.)

As relief, Plaintiffs seek a declaratory judgment, compensatory damages, punitive damages, and costs. (Kanitz Am. Compl. at 18-20; Butler Compl. at 17-19.)

### C. Motion for Dismissal or Summary Judgment Filed in Kanitz Case (03-10180)

Defendants' motion is brought pursuant to Rules 12(b) and 56(b) of the Federal Rules of Civil Procedure. When deciding a motion for dismissal under Rule 12(b)(b), "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176 (6th Cir. 1996) (citing *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993)); FED. R. CIV. P. 12(b)(6). Rule 56(b) provides that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b).

The Court is perplexed by the motion filed in the Kanitz case because it completely ignores the crucial facts that the visitation ban was reversed and Butler's misconduct conviction

overturned. For example, Defendants' motion makes the logically-appealing argument that the case should be dismissed because (1) Kanitz "violated the rules by inappropriately fondling prisoner Butler's crotch," (2) the rule prohibiting this behavior during visitations has long been upheld by courts as being based upon legitimate penological interests, and therefore (3) the suspension of her visitation rights was appropriate and not in violation of any rights. (Br. in Supp., Dkt. 23 at 5-8.) The only problem with this argument is that it turns a blind eye to the subsequent reversal of Hearing Officer Craig's findings that Kanitz and Butler violated the rules. It is difficult to conceive of how counsel for Defendants could have misapprehended the lawsuit as one brought to challenge a permanent ban on visitation. The brief goes on to argue as follows:

> In this case, Defendant Craig made findings that Defendants [sic] . . . engaged in sexual misconduct. Defendants [assert] that there is an adequate basis to sustain the Hearing Officer's decision. The decision to keep the video tape confidential was based on sound prison policies required to protect the security of the facility. Most importantly, Plaintiff has provided no documentation for her claim that Defendants presented false evidence against her.
>
> Plaintiff is essentially complaining that the Hearings Officer improperly found the statements of the reporting officers more credible than her denial of wrongdoing. Plaintiff would have this Court re-decide the issue of credibility.

(*Id.* at 12.) I am baffled by these arguments in light of the documentation attached to the complaint detailing the subsequent discovery that the video tape did not show what the corrections officers and hearing officer stated that it showed. The brief also asserts that "Plaintiff fails to allege any class-based or racial animus." (*Id.* at 15.) This is also inaccurate. As summarized above, Plaintiff Kanitz's complaint clearly asserts racial and other class-based discriminatory animus numerous times.

The Sixth Circuit's admonition to counsel in *Cunningham v. Sears, Roebuck and Co.*, 854 F.2d 914 (6th Cir. 1988), seems to be appropriate in this instance:

> Based on the record before us, counsel's treatment of this issue constitutes a serious misrepresentation of the facts. Although we recognize that counsel has a duty to zealously represent his client, there is a degree of candor necessary for effective disposition of cases in this Court that counsel owes as an officer of the court. His failure in this regard suggests bad faith. Accordingly, appellant's counsel is given notice that should such conduct recur, the Court will recommend that counsel be cited to show cause why he should not be held to have acted in bad faith and be subject to sanctions under the inherent power of this Court.

*Id.* at 916. Without belaboring the point, I suggest that, like in *Cunningham*, counsel in this case be put on notice that such misrepresentations will not be tolerated, and I further suggest that the motion be denied without prejudice because it misrepresents the material facts of the case.

### D. Defendants' Rule 56(b) Motion for Summary Judgment Filed in Butler Case (03-10322)

#### 1. Application of Rule 56

Rule 56(b) provides that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). In this instance, the motion is supported by sworn affidavits from all defendants. Rule 56(e) provides that

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. P. 56(e). Plaintiff Butler responded to Defendants' motion with a 27-page brief and 10 pages of exhibits. Plaintiff Butler did not, however, provide any affidavits, sworn testimony, or authenticated documents. Furthermore, neither the complaint nor motion response can be considered equivalent to an affidavit because neither document was "verified." *See Williams v.*

*Browman*, 981 F.2d 901, 905 (6th Cir. 1992) (statements in a verified complaint may function as the equivalent of affidavit statements for purposes of summary judgment). *See also* 28 U.S.C. § 1746(2) (providing the following format for a verified unsworn declaration executed in the United States: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)").

The question thus arises whether Plaintiff Butler's failure under the summary judgment rules to provide any sworn affidavits or authenticated documentary evidence precludes the Court from considering his response. The Sixth Circuit has discussed this issue and held that incarcerated *pro se* litigants cannot be penalized for failing to comply with the summary judgment rule's technicalities when the Court has not given them prior notice of the rule's requirements:

> The majority of circuits have held that a *pro se* litigant is entitled to notice of the consequences of a summary judgment motion and the requirements of the summary judgment rule. *See, e.g., Klingele v. Eikenberry*, 849 F.2d 409, 411 (9th Cir. 1988) (reaffirming its agreement with the rule providing *pro se* prisoners with notice of the summary judgment requirements)[.] **However, this court clearly has held that no such rule providing "special assistance" exists with respect to nonprisoner *pro se* litigants.** *Brock v. Hendershott*, 840 F.2d 339, 343 (6th Cir. 1988). The *Brock* court, relying on the rationale of the Ninth Circuit, stated that prohibiting special treatment for nonprisoner *pro se* litigants was only fair because parties choosing to have counsel "must bear the risk of their attorney's mistakes," and thus, "a 'litigant who chooses himself as a legal representative should be treated no differently.'" *Id*. (quoting *Jacobsen v. Filler*, 790 F.2d 1362, 1364-65 (9th Cir. 1986)). **However, this court specifically noted in *Brock* that "[t]his approach was carefully held not to be applicable to prisoners proceeding without counsel since they often have little choice in proceeding on their own behalf."** *Id.*

*U.S. v. Ninety-Three Firearms*, 330 F.3d 414, 427-28 (6th Cir. 2003) (footnote & citations omitted) (emphasis added). Furthermore, regarding evidence submitted for summary judgment consideration, the Sixth Circuit has explained that

> Federal Rule of Civil Procedure 56 requires the plaintiff to present evidence of evidentiary quality that demonstrates the existence of a genuine issue of material fact. Examples of such evidence include admissible documents or attested

12

testimony, such as that found in affidavits or depositions. **The proffered evidence need not be in admissible form, but its content must be admissible.** *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997).

*Perry v. Jaguar of Troy*, 353 F.3d 510, 516 n.3 (6th Cir. 2003). Here, Plaintiff Butler's documents may not be in admissible form since they have not yet been properly authenticated, but defendants have not raised any questions about their authenticity and there is no reason to believe that the documents, which consist of MDOC records and correspondence from the Ombudsman's office, could not be authenticated and admitted at trial.

When deciding a motion for summary judgment, all facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). The moving party's presentation of supporting affidavits which are uncontroverted by the non-moving party, however, does not necessarily require the grant of the motion:

> While an uncontroverted affidavit frequently establishes the absence of a genuine issue for trial, the mere fact that "affidavits filed in support of a motion for summary judgment are not controverted does not necessarily require its being granted. . . ." *Fitzke v. Shappell*, 468 F.2d 1072, 1077 (6th Cir. 1972). "Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." FED. R. CIV. P. 56(e), Advisory Committee Notes (1963 Amendment). Therefore, to satisfy his "burden of showing the absence of any genuine issue as to all of the material facts," Shaw "must make a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." *Fitzke*, 468 F.2d at 1077 n. 8.

*Vakilian v. Shaw*, 335 F.3d 509, 520 (6th Cir. 2003).

13

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### 2.     Defendants' Arguments

Defendants' motion filed in the Butler case, unlike that in the Kanitz case, does acknowledge that Butler's misconduct conviction was overturned and expunged from his record. Nevertheless, Defendants contend that "[t]he fact that a 'second pair of eyes' saw something different than the original hearing officer saw does not mean that the actions taken by defendants were wrong." (Dkt. 14, Br. in Supp. at 4.)   The motion argues: (1) that all claims against Defendant Craig, the hearing officer, should be dismissed because he is entitled to absolute judicial immunity (*id.*); (2) that Plaintiff Butler has failed to state an equal protection claim based upon racial discrimination where he has not demonstrated that he was treated differently than other persons in his circumstances (*id.* at 7-8);  (3) that Plaintiff Butler has failed to state a due process claim because he was provided all the process he was due (*id.* at 9-10); (4) that Plaintiff Butler's conspiracy claim is illusory and must be dismissed because Plaintiff has not shown a constitutional violation (*id.* at 10-12); (5) that "[b]ecause plaintiff has not shown a violation of any constitutional right, qualified immunity is not implicated" (*id.* at 15); and (6) that this Court should decline to exercise jurisdiction over the remaining state law claims (*id.* at 15-16).

I shall address these arguments in turn.

14

### 3.      Defendant Craig

Defendant Thomas Craig asserts that, as a hearing officer, he is entitled to absolute immunity with respect to Plaintiff's request for damages.  He further argues that a declaratory judgment is unwarranted because Plaintiff has not shown the violation of any constitutional right, and even if he has, a declaratory judgment condemning past actions is not proper under the law. (Dkt. 14 at 4-7.)  Plaintiff Butler counters that Defendant Craig forfeited his immunity when he disregarded MDOC policy directives, withheld evidence, refused to call a witness, and abused his authority by lying and falsifying evidence.  (Dkt. 33 at 8.)

The Sixth Circuit has held that the professional hearing officers employed by the Michigan Department of Corrections are absolutely immune from an action for monetary damages for their discretionary actions taken in their capacity as hearing officers.  *Shelly v. Johnson*, 849 F.2d 228, 229-30 (6th Cir. 1988).  *See also Williams v. McGinnis*, 57 Fed. Appx. 662 (6th Cir. 2003).  Judicial immunity from damages liability functions to immunize its beneficiaries for all discretionary judicial acts except for acts taken in "clear absence of all jurisdiction."  *Stump v. Sparkman*, 435 U.S. 349, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978).  In addition, a hearing officer's immunity is not forfeited because an action was taken in error, done maliciously, or even because the person cloaked in immunity allegedly exceeded his or her authority.  *Id*. at 356.

In this case, Defendant Craig's actions taken while presiding over Butler's major misconduct hearing were discretionary quasi-judicial acts which were clearly within Craig's jurisdiction as a professional hearing officer.  His decisions not to call a witness and not to reveal the video tape were within the discretion afforded to hearing officers, and even if these decisions were made with malicious intent, he is nonetheless immune from liability for such actions.  *See id.*  The cases cited by Plaintiff Butler in support of his argument that Defendant Craig forfeited

15

his immunity are distinguishable because those cases dealt with the application of qualified immunity, not absolute immunity.  Therefore, I suggest that Defendant Craig is absolutely immune from damages liability for his actions taken in connection with Plaintiff Butler's hearing.

Plaintiff Butler not only seeks damages, however, but also a declaratory judgment that Defendant Craig violated his due process rights to a fair and unbiased hearing when he refused to let him see the video tape evidence, refused to call the visiting room officer as a witness, and falsified evidence by specifically finding that "the video available does clearly show Ms. Kanitz's hand in Mr. Butler's crotch" and the "touching of the crotch of the male to be sexual in nature . . . ."  (MDOC Major Misc. Hrng. Report, attached as Ex. D-10 to Butler's response.)

Defendants argue that a declaratory judgment is not appropriate because there was no constitutional violation and, even if there was, the declaration would only concern past actions and therefore is not permitted.  Defendants cite the following passage from *Banas v. Dempsey*, 742 F.2d 277 (6th Cir. 1984), in support of their motion:

> Any declaratory judgment in these cases would concern only the past conduct of the state official, a finding, in retrospect, that certain activities of the state official had previously violated plaintiffs' rights under federal law.  In our view, such a declaration would not be prospective in nature, and therefore an order based solely on a declaration regarding the past conduct of the state official would not be an order falling within the "prospective-compliance" exception necessary to bring it "on the *Ex parte Young* side of the Eleventh Amendment."  *Quern*, 440 U.S. at 347, 99 S. Ct. at 1148.

*Id.* at 288 (quoting *Quern v. Jordan*, 440 U.S. 332, 347, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979)).

I suggest that counsel for Defendant Craig is correct that a declaratory judgment is not an appropriate remedy in this instance.  In Wright and Miller's learned treatise, they explain that

> [t]he remedy made available by the Declaratory Judgment Act and Rule 57 is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without

> waiting until an adversary should see fit to begin an action after the damage has
> accrued.

10B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2751 (3d ed.). Here,

there is no danger of future loss, and damages are not accruing. To the contrary, the reason a

declaratory judgment is sought is because damages are precluded by the defendant's absolute

immunity. The declaratory judgment remedy is not appropriate, however, when its issuance would

have no practical effect on the parties:

> A declaratory judgment is inappropriate solely to adjudicate past conduct. *Crown
> Cork & Seal Co., Inc. v. Borden, Inc.*, 779 F. Supp. 33, 35 (E.D. Pa. 1991). "The
> real value of the judicial pronouncement – what makes it a proper judicial resolution
> of a 'case or controversy' rather than an advisory opinion – is in the settling of some
> dispute which affects the behavior of the defendant towards the plaintiff." *Rhodes
> v. Stewart*, 488 U.S. 1, 4, 109 S. Ct. 202, 203, 102 L. Ed. 2d 1 (1988) (quoting
> *Hewitt v. Helms*, 482 U.S. 755, 761, 107 S. Ct. 2672, 2676, 96 L. Ed. 2d 654 (1987))
> (emphasis in original).

*Gruntal & Co., Inc. v. Steinberg*, 837 F. Supp. 85, 89 (D. N.J. 1993) (cited in *Wright & Miller*).

I suggest that in this case, where the alleged wrongful actions of Defendant Craig occurred

in the past, are not ongoing, and where Defendant Craig is immune from damages liability, a

declaratory judgment against Defendant Craig would not be appropriate because it would have no

practical effect on the parties. Accordingly, I suggest that Defendant Craig be dismissed from the

case.

### 4. Equal Protection Claim

Defendants' next argument is that Plaintiff Butler has failed to state an equal protection

claim where he has not demonstrated that he was treated differently than other prisoners in his

circumstances. Defendants assert that the visit between Kanitz and Butler was terminated not

because Butler is black and Kanitz is white, but because they were engaging in prohibited sexual

behavior, and therefore the equal protection claim fails because "Plaintiff has not alleged or shown

that couples of the same race were allowed to engage in sexual behavior in the visiting room."
(Defs.' Mot., Dkt. 14 at 8.)

I suggest that Plaintiff is not required to allege or demonstrate that same-race couples were allowed to engage in sexual behavior in the visiting room in order to state an equal protection claim. The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The Supreme Court has stated that this language "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799, 117 S. Ct. 2293, 138 L. Ed. 2d 834 (1997). The Sixth Circuit recently explained that, "[g]enerally, an equal protection claim requires a plaintiff to allege that a defendant has intentionally discriminated against him or her because the individual is part of a vulnerable minority class of protected individuals." *Barnes v. City of Cincinnati*, 401 F.3d 729, 739 (6th Cir. 2005) (citing *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 256, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977)).

Here, Plaintiff Butler alleged in his complaint that he was intentionally and maliciously discriminated against on the basis of his race. Further, in his response to defendants' motion, he asserts that "there is an established pattern to the way sexual misconducts are dealt with at this facility. White males are routinely warned (by the correctional officers) about acts or behaviors that if done by a black male would be cause for visit termination, misconduct tickets, and subsequent visitor restrictions, even in situations where a sexual misconduct has not been clearly established." (Dkt. 33 at 23.) He claims that he can furnish supporting depositions during discovery, and further contends that this fact can be proven through an examination of MDOC misconduct records. (*Id.* at 23-24.)

18

In light of the foregoing, I suggest that Plaintiff Butler has met the requirement of alleging that he was treated differently because of his membership in a protected class, and therefore I further suggest that defendants' motion for summary judgment on Plaintiff Butler's equal protection claim be denied.

### 5. Due Process Claim

Plaintiff Butler's *pro se* complaint asserts that Defendants Cooke and Osborne violated his due process rights by manufacturing knowingly-false major misconduct reports and giving false testimony which caused him to be found guilty of a trumped-up disciplinary charge and subjected to sanctions as well as a permanent restriction of visitation in violation of his First, Eighth and Fourteenth Amendment rights. (Compl. at 2, 5, 14-15.) Plaintiff also alleges that Defendant Frey violated his due process rights by failing to disclose the false and tainted evidence during the investigatory period and instead allowing it to be presented against Plaintiff at his misconduct hearing. (Compl. at 6, 15.)

Defendants argue in their motion that Plaintiff Butler has failed to state a due process claim because he was provided all the process he was due and because the Supreme Court in *Overton v. Bazetta*, 539 U.S. 126, 123 S. Ct. 2162, 156 L. Ed. 2d 162 (2003), held that some curtailment of a prisoner's First Amendment right to freedom of association is allowed so long as the prison regulation imposing the restriction on visitation is reasonably related to legitimate penological concerns. (Defs.' Mot., Dkt. 14 at 9.)

In this case, however, Plaintiff Butler is not challenging an MDOC regulation or even the application of a regulation. Plaintiff has clearly articulated his claim to be that his due process rights were violated by the State's knowing use of false evidence against him which resulted in his

19

being placed in more restrictive confinement and the complete denial of his right to associate with

his fiancé for no legitimate penological reason.

In 1959, the Supreme Court held that the introduction of false evidence violates the Due

Process Clause:

> First, it is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment. . . .  The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.

*Napue v. People of State of Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959).

The use of false evidence in a state prisoner's administrative disciplinary hearing is no less a

violation of the Due Process Clause than its use in a criminal trial, as was explained by the court

in *Morrison v. Lefevre*, 592 F. Supp. 1052 (S.D.N.Y. 1984):

> The introduction of false evidence in itself violates the due process clause.  In *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S. Ct. 340, 342, 79 L. Ed. 791 (1935), the Court explained the violation in these terms:  the use of "[s]uch a contrivance by a State to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation."  *See Brady v. Maryland*, 373 U.S. 83, 86-88, 83 S. Ct. 1194, 1196-1197, 10 L. Ed. 2d 215 (1963); *Napue v. Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173, 1177, 3 L. Ed. 2d 1217 (1959); *Leyva v. Superintendent, Green Haven Correctional Facility*, 428 F. Supp. 1, 2 n. 1 (E.D.N.Y. 1977).  The fact that prisoners are not entitled to the full panoply of procedural protections afforded at trial when they are subject to internal prison discipline does not deprive them of the fundamental right not to have state officials make purposefully false statements about them.  "The way a society treats those who have transgressed against it is evidence of the essential character of that society," *Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194, 3199, 82 L. Ed. 2d 393 (1984), and it is "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S. Ct. 149, 152, 82 L. Ed. 288 (1937), that even prisoners not be deprived of the limited liberty guaranteed to them through conduct of the sort that affected Morrison.  The officers who planted the vial and then reported the evidence to prison officials are therefore liable under § 1983 for depriving Morrison of his liberty without due process of law.

*Id.* at 1073.

In this case, Plaintiff points to the subsequent findings by the Ombudsman's investigator and Hearing Administrator Stapleton in support of his claim that Defendants Cooke, Osborne, and Frey knowingly presented, or allowed to be presented, false evidence at his administrative misconduct hearing.  Plaintiff further points to a personal letter written to Plaintiff Kanitz by Defendant Warden White wherein he stated that "[a] review of the video tape clearly shows that your hand was between Mr. Butler's legs, touching his groin" as evidence of Defendant White's personal involvement and acquiescence in the use of false evidence.  (Dkt. 33 at 15; Ex. 26A.)

Defendants assert that just because a "second set of eyes" viewed the video tape differently does not necessarily mean that the defendants knowingly presented false evidence, or allowed such to be presented.  Defendant Osborne states in his affidavit that "[t]he video may not have clearly shown the same things that Officer Cooke and I witnessed, but only because the recorder was not turned on soon enough." (Defs.' Mot., Dkt. 14, Osborne Aff., Ex. C. ¶ 5.)  Plaintiff Butler counters this by pointing out that in both of the "charging" documents – the Visitors Violation Report and the Major Misconduct Report – it was alleged that he and Plaintiff Kanitz "were viewed, *and recorded*, on the visiting room monitor with her hand (right) in between his legs.  She was rubbing his crotch area."  (Visitors Violation Report, attached to Defs.' Mot., Dkt. 14.)  He asserts that Defendant Cooke was emboldened to make such a statement because she knew that neither Butler nor Kanitz would ever be allowed to view the video tape.

On a motion for summary judgment, the Court must assess whether the non-moving party, here Plaintiff, has enough evidence to give rise to a genuine issue of material fact for submission to a jury, or whether the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.  In the case of Plaintiff Butler's due process claim, I suggest that the evidence gives rise to a genuine issue of disputed material fact as to whether Defendants Cooke,

Osborne, Frey and White knowingly presented false evidence against Plaintiff Butler or discovered the false evidence and failed to reveal its use. Defendants' affidavits denying such alleged actions do not entitle them to summary judgment, but serve to reveal the disputed nature of the facts.

### 6. Conspiracy Claims

Defendants contend that Plaintiff Butler's conspiracy claims must be dismissed because they are illusory and because Plaintiff has not shown a constitutional violation. As previously discussed, in my view, Plaintiff has presented sufficient evidence to create a material issue of fact on whether his constitutional rights to due process and equal protection were violated. Thus, I will only address Defendants' remaining argument that the conspiracy claims as alleged are illusory.[4]

### a.     Civil Conspiracy Claims Under § 1983

The Sixth Circuit recently explained that

[t]he standard for proving a § 1983 conspiracy claim was set forth by this court in *Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985):

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Id.* at 943-44. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Furthermore, this court has acknowledged that because "[r]arely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire, . . .

---

[4]Black's Law Dictionary defines "illusory" as "[d]eceptive; based on a false impression." BLACK'S LAW DICTIONARY (8th ed. 2004) (Westlaw).

circumstantial evidence may provide adequate proof of conspiracy." *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000) (alteration in original).

*Spadafore v. Gardner*, 330 F.3d 849 (6th Cir. 2003).

In this case, Plaintiff Butler has specifically alleged that Defendants Cooke and Osborne conspired to terminate the visit on false grounds, that Defendant Frey's participation in the conspiracy is shown by his failure to call to light the fact that the video tape did not show what Defendants Cooke and Osborne claimed, and that Defendant White's participation in the conspiracy is evidenced by his letter stating that he reviewed the video tape and it clearly showed Plaintiff engaging in prohibited sexual conduct. In his response to Defendants' motion, Plaintiff further points to a 2004 memorandum to the correctional facility staff authored by Defendant Warden White entitled "From the Warden's Office" wherein he stated the following:

> Are the rest of us doing our jobs or carrying ourselves with the character and professionalism that would draw respect and praise from others? It is troubling to hear from prisoners and quite often from staff about the way some of us conduct ourselves towards others. I've been around long enough to know that prisoners and staff are not always truthful in their accusations. I also know that only a small percentage of staff lack or don't practice the values expected from the Department or a decent society. When we lie or mistreat the prisoners or our fellow worker, are you any better than the lawbreakers that we watch everyday? The people that write false misconducts, destroy prisoner property, use profane language towards others, harass prisoners or fellow workers, you know who you are. Please stop because you make us all look bad. Don't forget we are role models to the prisoners, the public, our children and grandchildren. Respect gets respect!!

(Dkt. 33 at Ex. 31.)

In light of the foregoing, I suggest that Plaintiff has presented circumstantial evidence on which a jury could find that there was a plan to discriminate against Plaintiff on the basis of his race, that the alleged coconspirators shared in the general conspiratorial objective, and that overt acts were committed in furtherance of the conspiracy that caused injury to Plaintiff. Accordingly,

I suggest that Plaintiff's conspiracy claim alleged under § 1983 is not illusory, and that Defendants' motion should therefore be denied as to this claim.

### b. Conspiracy Claims Under § 1985

In order to state a cause of action for conspiracy under § 1985, a plaintiff must allege the existence of: "(1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen." *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996). The plaintiff must also allege that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Bartell v. Lohiser*, 215 F.3d 550, 559-60 (6th Cir. 2000) (quoting *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 829, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983)).

For the same reasons just discussed, I suggest that defendants' motion with regard to Plaintiff's § 1985 claim of conspiracy to deprive him of his due process and equal protection rights should be denied.

### 7. Qualified Immunity

Defendants' brief includes a section on the affirmative defense of qualified immunity, wherein each of the arguments discussed above are reiterated and summarized, followed by the conclusion that, "[b]ecause plaintiff has not shown a violation of any constitutional right, qualified immunity is not implicated." (Defs.' Mot. at 15.) The Supreme Court has instructed, however, that the initial inquiry in determining whether a grant of qualified immunity is proper is whether *the facts asserted by the plaintiff, taken in the light most favorable to the plaintiff*, establish a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272

(2001). Here, where defendants consistently refute the facts asserted by Plaintiff Butler – namely, that he and his fiancé were only holding hands when they were falsely accused of prohibited sexual contact, convicted at a "sham" hearing where they were not allowed to view the evidence against them or to call an eyewitness, and prohibited from seeing each other for eight months before the visitation restriction was overturned – I suggest that defendants have not properly brought the question of qualified immunity before the Court.

### 8. Pendent State Claims

Defendants' final argument is that this Court should decline to exercise jurisdiction over the remaining state law claims since there are no federal claims on which to proceed. In light of my recommendation that many of the federal claims should survive this motion, I suggest that Defendants' argument with respect to the pendent state claims fails.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,

1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.



 s/ *Charles E Binder*
CHARLES E. BINDER
Dated: May 4, 2005                          United States Magistrate Judge




### CERTIFICATION

      I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Diane M. Smith, and served in the traditional manner on Ellen Kanitz, Christine M. Campbell, Gordon Butler, and Honorable David M. Lawson.


Dated:  May 4, 2005                     By   s/Jean L. Broucek
                                        Case Manager to Magistrate Judge Binder