# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION


ELLEN KANITZ,

    Plaintiff,                          CASE NO. 03-CV-10180

v.                                  DISTRICT JUDGE DAVID M. LAWSON
                                      MAGISTRATE JUDGE CHARLES E. BINDER
CORRECTIONS OFFICER M. COOKE,     **CONSOLIDATED CASES**
CORRECTIONS OFFICER SERGEANT
OSBORNE, and HEARING
INVESTIGATOR M. FREY,

    Defendants;

and

GORDON M. BUTLER,                   CASE NO. 03-CV-10322

    Plaintiff,

v.

CORRECTIONS OFFICER M. COOKE,
CORRECTIONS OFFICER SERGEANT
OSBORNE, and HEARING
INVESTIGATOR M. FREY,

    Defendants.[1]
_____/


## MAGISTRATE JUDGE'S REPORT & RECOMMENDATION ON
## DEFENDANTS' SECOND RULE 56 MOTION FOR SUMMARY JUDGMENT
### (Dkt. 84)


## I.    RECOMMENDATION

---

[1]Defendants Warden Harold White and Hearing Officer T. Craig were terminated from both consolidated cases on November 22, 2005.

For the reasons set forth below, **IT IS RECOMMENDED** that:

1.   Defendants' motion for summary judgment be **GRANTED** as to all Defendants regarding Plaintiffs' due process claim.

2.   Defendants' motion for summary judgment be **DENIED** in all other respects, i.e., as to Plaintiffs' equal protection and conspiracy claims against all Defendants, and that

3.   Defendants are not entitled to qualified immunity on the remaining federal or pendent state claims.

## II.   <u>REPORT</u>

### A.   Introduction

By order of U.S. District Judge David M. Lawson, these consolidated cases were referred to the undersigned Magistrate Judge for pretrial case management pursuant to 28 U.S.C. § 636(b)(1).  (Dkt. 31.)  This case has a lengthy procedural history.  A previous Report and Recommendation concerning various Defendants' motions to dismiss and for summary judgment was issued on May 4, 2005, and was adopted in part by Judge Lawson on November 22, 2005. (Dkt. 38, 43.)  *Pro bono* counsel was appointed for Plaintiffs on November 30, 2005. (Dkt. 44.) On June 22, 2007, Defendants filed a Second Motion for Summary Judgment that is the subject of this Report and Recommendation. (Dkt. 84.)  Plaintiffs have filed a response (Dkt. 90,) and Defendants have replied to that response. (Dkt. 92.) Pursuant to Eastern District of Michigan Local Rule 7.1(e)(1), the motions are ready for Report and Recommendation without oral argument.[2]

The underlying facts are given in some detail in both the first Report and Recommendation (Dkt. 38) and Judge Lawson's Order adopting the Report, (Dkt. 43) and will not be repeated in full

---

[2]Plaintiff Butler filed a Notice of Waiver of Oral Argument on December 20, 2007. (Dkt. 95.)

here.  Plaintiff Gordon Butler ("Butler") was incarcerated at the Parnall Correctional Facility in Jackson, Michigan, when his fiancé, Plaintiff Ellen Kanitz ("Kanitz"), visited him for the first time on October 5, 2002.  Plaintiffs state that during the visit, Corrections Officer ("C/O") Mary Cooke burst into the visiting room and yelled for all to hear, "That's it, your visitation is terminated, you are on tape rubbing this prisoner's crotch with your hand, your visitation is terminated immediately . . . ."  (Kanitz Am. Compl., Dkt. 18 at 4.)  Plaintiffs protested that the allegation was completely untrue, but another corrections officer, Sergeant Reed Osborne, came out of the control center at the same time and supported Cooke's allegations.  The visit was terminated and Butler was charged through the prison disciplinary system with Sexual Misconduct[3] and Kanitz received a Notice of Proposed Visitor Restriction from MDOC Hearing Investigator M. Frey.

On November 1, 2002, Kanitz's hearing on the proposed visitor restriction was held. Hearing Officer T. Craig refused to allow Kanitz to see the video tape, and told her that it "clearly shows your hand firmly up against his crotch.  Mr. Butler has two hands over your hand." (Admin. Hrng. Report, Kanitz Am. Compl. at Ex. 2.) Kanitz expressed her belief that they "were targeted because of racial discrimination.  I would like to put [on the record] that I am white, and he is black."  (*Id.*)  Based on the statements of Officer Cooke and Sergeant Osborne, along with the videotape, Hearing Officer Craig concluded that the prohibited conduct had occurred; therefore, and Warden Harold White notified Kanitz that she was permanently restricted from visiting any MDOC facility.  (Notice of Permanent Visitor Restriction, Kanitz Am. Compl. at Ex. 4.)

---

[3]In the MDOC Major Misconduct Report charging Butler with sexual misconduct, Defendant C/O Cooke described the incident as follows:

> Prisoner Butler and his visitor Ellen Kanitz were observed, and recorded, on the visiting room monitor located in the control center with her right hand in between his legs.  Butler had hands on her hand and she was rubbing his crotch area.

(Major Misc. Report, Kanitz Am. Compl. at Ex. 1.)

Butler's separate prisoner misconduct hearing was also presided over by Hearing Officer T. Craig. Butler likewise was not allowed to view the tape and his request to call the visiting room officer as a witness was denied. Hearing Officer Craig concluded, as he had with respect to Plaintiff. Kanitz, that the prohibited conduct had occurred so Accordingly, Butler was found guilty of Sexual Misconduct and was sanctioned to five days of "toplock."[4] (Maj. Misc. Hrng. Report, Kanitz Am. Compl. at Ex. 3.)

Kanitz and Butler both appealed, Butler filed grievances, but to no avail. (Kanitz Am. Compl. at Ex. 14; Butler Compl. at Ex. 3; Butler Compl. ¶¶ 41-49; grievance docs. attach. to Compl.) Butler states that during this time he came up for review before the Michigan Parole Board, but after extensive questioning about his sexual misconduct conviction, his parole was denied. (Butler Compl. ¶ 33.) Kanitz began a letter-writing campaign to senators, the director of the MDOC, several attorneys, and others, resulting in the Office of Legislative Corrections Ombudsman assigning an investigator. (Kanitz Am. Compl. ¶ 34.) After viewing the video, Chief Investigator Charlene Lowrie forwarded her report to Richard Stapleton, the MDOC Hearings Administrator who had denied the requests for rehearing, stating in pertinent part the following:

> The video shows . . . [t]he visitor's hand draped over Butler's leg, not in his crotch. Butler then takes her hand and their hands are together <u>between his knees</u>. Their hands are nowhere near his crotch.
>
> The video does not support Sgt. Osborne's description at 1130 hours when he began recording.
>
> The video does not support the hearing officer's statement.

---

[4]"A prisoner on toplock shall not leave his/her cell, room or bunk area for any reason without specific authorization from the appropriate staff person." MDOC Policy Directive 03.03.105 (VV).

Ms. Kantiz' hand appears to be relaxed on Butler's leg in the video while the couple is engaged in a conversation, putting into further question Sgt. Osborne and Officer Cooke's statements.

For these reasons, I recommend your consideration for rehearing and dismissal of the misconduct and dismissal of the visitor restriction.

(Lawrie Report, Kanitz Am. Compl. at Ex. 11 (emphasis in original).)

Stapleton reconsidered the requests for rehearings and overturned the misconduct conviction and the visitor restriction, stating the following:

Requests for rehearing were first received from the prisoner and the visitor . . . on 10/25/02 and 11/15/02. Their requests were reviewed and disapproved on 12/19/02 and 1/23/03. The previous decision on their requests are reconsidered based on additional argument brought in the prisoner's behalf by the Office of Legislative Corrections Ombudsman. The hearing decisions were clearly based on the hearing officer's reliance on a video recording of the prisoner and visitor in the visiting rooms. The hearing officer found the visitor had placed her hand in the prisoner's groin for the purpose of sexual gratification. The record includes specific reference to the video as showing the visitor's "hand firmly up against his crotch." Rehearing requests were denied in large part based on the hearing officer's representation of what was reflected in the video recording. That recording is now reviewed by the Hearings Administrator at the request of the Chief Investigator of the Office of Legislative Corrections Ombudsman. The Ombudsman's Office is correct that the video reflects only that the "visitor's hand is draped over Butler's leg, not in his crotch." In fact, the video reveals no touching of the prisoner's crotch. The hearing decisions are therefore overturned and the charge of Sexual Misconduct is dismissed and the visitor restriction removed.

(Request for Rehearing dated 6/5/03, Kanitz Am. Compl. at Ex. 13.) All references to the matter were subsequently expunged from Butler's records.

Plaintiffs bring their actions under 42 U.S.C. §§ 1983 and 1985, and they allege that the remaining Defendants: (1) violated the equal protection clause; (2) violated the due process clause; (3) conspired to violate Plaintiffs' civil rights; and (4) committed the state law torts of libel and slander *per se*, violation of the Fair and Just Treatment Clause of the Michigan Constitution, and

intentional infliction of emotional distress. As relief, Plaintiffs seek compensatory damages, punitive damages, and costs. (Kanitz Am. Compl. at 18-20; Butler Compl. at 17-19.)[5]

## C. Summary of the parties' arguments

The remaining Defendants, Cooke , Reed, Osborne, and Frey contend that they are entitled to summary judgment. They argue that they did not have any involvement in the hearings process (for either Plaintiff Kanitz's denial of visitation privileges or Plaintiff Butler's misconduct hearing) beyond the gathering of information; thus, they cannot be liable for any alleged due process violation. (Dkt. 84 at 12-14.) The Defendants further argue that Plaintiffs have been unable to meet their burden to show a requisite meeting of the minds to deprive Plaintiffs of any constitutionally protected rights and thus, cannot prove a conspiracy existed. (Dkt. 84 at 14-16.) Defendants also contend that, should the court find any constitutional rights were violated, they are entitled to qualified immunity. (Dkt. 84 at 19.) Finally, Defendants urge the Court not to exercise supplemental jurisdiction over the state law claims. (Dkt. 84 at 19-20.) Defendants maintain the sincerity of their belief that Plaintiffs engaged in sexual misconduct. *Id*. ; Dkt. 84 at 10-11; Ex. 1, Dep. Osborne at 42-50; Ex. 2 , Dep. Cooke at 37-40.)

Plaintiffs' response (Dkt. 90) rests primarily on Judge Lawson's Opinion and Order, which is block-quoted in the brief (Dkt. 43 at 7-8, 9-10, and 11-13.) With respect to the equal protection claim, Plaintiff specifically notes that the Order stated that had Plaintiff Butler provided an affidavit regarding racial motivation "there would be little doubt that a fact question exists" and that now there is deposition testimony of the Plaintiff supporting those allegations. (Dkt. 90 at 8.) As to due process and conspiracy, Plaintiffs cite the Order and contend that genuine issues of material fact exist. (Dkt. 90 at 9-14.) Plaintiffs also argue that a reasonable person would have

---

[5]Declaratory relief was requested but was deemed inappropriate in the first Report as adopted. (Dkt. 38, 43.)

recognized the actions violated clearly established constitutional rights and that the Defendants did not act reasonably so they are not entitled to qualified immunity. (Dkt. 90 at 14-15.) Finally, Plaintiffs ask the Court to exercise supplemental jurisdiction over the state law claims after denying Defendants' motion for summary judgment.

In their reply, Defendants argue that Plaintiff has failed to show that these particular Defendants engaged in discriminatory behavior or had the requisite discriminatory animus. (Dkt. 92 at 2-5.)

### D.     Motion standards

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is

[more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit has explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### E.     Discussion

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the United States Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).

#### 1.     Due Process

In order to prevail on a procedural due process claim in the Sixth Circuit, plaintiff must: (1) demonstrate that he is deprived of liberty or property as a result of established state procedure that

itself violates due process rights; or (2) prove that the defendants deprived him of liberty or property pursuant to a "random and unauthorized act" and that available state remedies would not adequately compensate for the loss. *See Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991).[6] An inmate has the burden of pleading and proving that the state remedies for redressing the wrong are inadequate. *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). Plaintiffs have not alleged that established state procedures violate due process rights nor has he alleged the absence of state remedies to redress any procedural wrong; therefore, I suggest that summary judgment in favor of defendants could be granted as to the procedural due process claim on this ground alone.

In addition, even though the alleged false misconduct may have been unfair, "[a] prison inmate is not automatically denied due process by being falsely accused of a violation of prison rules, as long as the inmate is afforded the opportunity to rebut the charge at a hearing, as Plaintiff was here." *Washington v. Randall-Owens*, No. 06-12588, 2007 WL 2713749, *6 (E.D. Mich. Sept. 17, 2007), *citing Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974) and *Freeman v. Rideout*, 808 F.2d 949 (2nd Cir. 1986), *cert. denied*, 485 U.S. 982, 108 S. Ct. 1273, 99 L. Ed. 2d 484 (1988). In *Washington*, the district court concluded that even if Plaintiff had pleaded the inadequacy of the actual proceedings, Michigan law provides effective remedies for review of prisoners' misconduct convictions, both major and minor. *Id.*, *citing,* MICH. COMP. LAWS § 791.254-255. Defendants argue that Plaintiffs were given all the process that was due because the misconduct was overturned and visitation restored after the ombudsman's investigation. (Dkt. 84 at 13.) Since Michigan law provides effective remedies for review of misconduct convictions,

---

[6]This holding is derived from *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), overruled in part by *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed.2d 662 (1986), which held that deprivation of liberty or property interests by state employees do not give rise to federal due process claims unless the state fails to afford an adequate post-deprivation remedy. Thus, "a procedural due process claim will not be stated unless the plaintiff pleads and proves that available state remedies are inadequate to redress the wrong." *Copeland v. Machulis*, 57 F.3d 476, (479 (6th Cir. 1995).

and Plaintiffs were afforded review and relief in the instant case, I suggest that summary judgment could be granted as to all Defendants on the due process claim on this ground as well.

Even if Plaintiffs could show that state processes are inadequate or unavailable, I suggest that they have failed to state a claim based on procedural due process since neither Plaintiff has a protected liberty interest in visitation. To plead a procedural due process claim, a plaintiff must allege: (1) a life, liberty, or property interest exists and has been subject to interference by the state; and (2) the procedures attendant upon the deprivation of an existing interest were constitutionally insufficient. *Kentucky Dep't. Of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1990). Procedural due process rights arise only after a showing that plaintiff holds a constitutionally protected liberty interest. *Mitchell v. Horn*, 318 F.3d 523, 531 (3rd Cir. 2003); *International Union, United Auto., Aerospace & Agric. Workers of Am., Local 737 v. Auto Glass Employees Fed. Credit Union*, 72 F.3d 1243, 1251 (6th Cir. 1996)(absent protected property interest in continued employment, no process is due). Plaintiffs have no constitutional liberty interest in visitation. *Overton v. Bazzetta*, 539 U.S. 126, 131, 123 S. Ct. 2162, 156 L. Ed. 2d 162 (2003); *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 461, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989); *Bazzetta v. McGinnis*, 430 F.3d 795, 804 (2005); *Conway, III v. Wilkinson*, No. 2:05CV820, 2007 WL 901531,*4 (S.D. Ohio Mar. 26, 2007).[7] I further suggest that any deprivation of visitation privileges does not "impose[] an atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). Therefore, I suggest that Plaintiffs cannot state a claim

---

[7]This result is not altered by the fact that the visitation privileges were suspended as a result of a misconduct violation. *Bazzetta*, 430 F.3d at 802-03.

that their due process rights were violated by termination of visitation rights and Defendants are entitled to summary judgment on this claim. *Conway, III*.

I note that the original Report relied on *Morrison v. LeFevre*, 592 F. Supp. 1052, 1073 (S.D. N.Y. 1984), whose holding was, as the Order adopting noted, discredited by *Freeman v. Rideout, supra.* (Dkt. 43 at 20.) The Order also referred to the decision in *Jones v. Coughlin*, 45 F.3d 677, 679 (2nd Cir. 1995), which distinguished *Rideout* because in *Rideout* there was no allegation that the Plaintiff was denied the right to call key witnesses as there had been in *Jones v. Coughlin*. (Dkt. 43 at 21.) The Order noted that since Plaintiff Butler was denied the ability to see potentially inculpating or exculpating evidence, i.e., the videotape, that the instant case was more like *Jones v, Coughlin* than *Rideout*. (Dkt. 43 at 21.) However, the *Jones v. Coughlin* decision does not undermine the concept that there is no procedural process due absent a protected liberty interest. The *Jones v. Coughlin* court quotes *Freeman v. Rideout*, as holding that a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a *protected liberty interest*." *Freeman v. Rideout*, 808 F.2d at 951 (emphasis added); *Jones v. Coughlin*, 45 F.3d at 679. In *Jones v. Coughlin*, the alleged defective hearing resulted in the deprivation of protected liberty interests in the Second Circuit, i.e., punitive segregation (120 days) and loss of four months of good-time credits. *See, Iqbal v. Hasty*, 490 F.3d 143, 165 (2nd Cir. 2007); *Abed v. Armstrong*, 209 F.3d 63, 66-67 (2nd Cir. 2000)("inmates have a liberty interest in good time credit they have already earned" but not in the "opportunity to earn good time credit" in prison official's discretionary decisions regarding eligibility). Therefore, although the alleged procedural failures are closer to those in *Jones v. Coughlin*, the requisite liberty interest present in *Jones v, Coughlin* is not present here. Thus, I maintain my suggestion

that summary judgment should be granted on this procedural due process claim for lack of a protected liberty interest.

Alternatively, Defendants argue that Defendants Cooke and Osborne had no involvement in the hearing process beyond submitting statements and gathering information. (Dkt. 84 at 12-13.) Defendants specifically note that they "had no role in the conduct of Plaintiffs' hearing, the decision to allow Plaintiffs to call witnesses, or even to view the videotape [and Plaintiffs] successfully appealed both the misconduct ticket and the visitor restriction, by using state provided remedies." (*Id.* at 14.) "To succeed under § 1983, a plaintiff must show personal involvement by the defendant in the constitutional violation." *Jacob v. Township of West Bloomfiled*, 192 Fed. Appx. 330, 336 (6th Cir. 2006), *citing Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Salehphour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998). Moreover, a complaint must identify the "specific conduct" of each defendant that forms the basis for the alleged constitutional violation. *Leed v. City of Muldraugh, Meade County, Kentucky*, 174 Fed. Appx. 251, 255 (6th Cir. 2006).

I suggest that Defendants Cooke and Osborne were not sufficiently personally involved in decisions regarding how the hearing was to be conducted and what evidence would be made available to Plaintiffs. *Brannum v. Overton County School Board*, ___ F.3d ___, 2008 WL 441536, *9 (6th Cir. Feb. 20, 2008)(concluding that the school board members, whose role was "limited to a general decision to improve school building security by installing video equipment" were not sufficiently personally involved in the "decision as to the location of the cameras and how and when they would be used" such that "their role in the matters giving rise to this suit are too indirect to subject them to § 1983 liability"); *Dorogosch v. Metcalf*, No. 05-60071, 2007 WL 2421477, *4 (E.D. Mich. Aug. 22, 2007)(dismissing defendants who were part of the arrest team but who had

no involvement in plaintiff's probation hearing where plaintiff complained that defendants violated his constitutional rights by failing to take him promptly before the court for a hearing). It is a closer question, however, when considering whether the presentation of allegedly false or misleading evidence could be considered sufficient personal involvement. There is some support for the Defendants' position that even if they had supplied inaccurate evidence, that would be insufficient personal involvement in the decision arising out of the hearing that resulted in suspension of visitation privileges. *Harris v. Jan*, No. 3:05CV7370, 2005 WL 3483551, *3 (N.D. Ohio Dec. 15, 2005)(concluding that defendant's testimony regarding plaintiff's child support arrearage at a hearing was not sufficient personal involvement in the alleged inaccurate decision concluding plaintiff was in arrearage on three different accounts where one of three alleged arrearage was actually an overpayment). Accordingly, I suggest that lack of personal involvement in the process is a viable alternative ground to grant summary judgment in favor of Defendants Cooke and Osborne.

I therefore suggest that summary judgment be granted as to all the remaining Defendants as to this procedural due process claim.

### 2. Equal Protection Claim

The Fourteenth Amendment guarantees that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend XIV, § 1. "'The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by the express terms of a statute or by its improper execution through duly constituted agents.' *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445, 43 S. Ct. 190, 67 L. Ed. 2d 340 (1923)(internal

quotation marks and citation omitted)." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 710 (6th Cir. 2005).

There is some confusion whether a prisoner needs to allege deprivation of a protected interest in addition to his claim that he was treated unequally. Some courts have held that even where a plaintiff lacks a life, liberty, or property interest, he may bring an equal protection claim. *Garcia, supra; Troxel v. DeWalt*, No. 06-CV-273-KSF, 2007 WL 196894, *2 (E.D. Ky. Jan. 23, 2007)(addressing equal protection claim after finding no liberty interest in plaintiff's prison job); *Skibbe v. Michigan Dep't of Corrections*, No. 1:05-CV-175, 2006 WL 625869, *4 (W.D. Mich. Mar. 9, 2006)(addressing equal protection claim after finding plaintiff had no liberty interest in prisoner classification); *Enriquez v. Stringfellow*, 81 Fed. Appx. 487, 2003 WL 22770168 (5th Cir. Nov. 24, 2003)("absence of a protected liberty interest in release on parole does not, however, preclude an equal protection claim,") citing *Sandin v. Conner*, 515 U.S. 472, 487, n. 11, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).[8] At other times, courts appear to require plaintiff show the presence of a protected interest before challenging the equality of the state's individual provision of that protected interest. *E.g., Haynes v. Hudson*, 899 F.2d 1221 (Table), 1990 WL 41025, *1 (6th Cir. Apr. 10, 1990)(upholding dismissal of complaint as frivolous where plaintiff alleged violation of his due process and equal protection rights because there is no constitutional right to parole nor had Michigan created a liberty interest in parole without distinguishing between due process and equal protection claims); *Chevrier v. Marberry*, No. 04-10239, 2006 WL 3759909,

_____

[8]The footnote cited comes at the conclusion of the majority opinion which holds that neither the Hawaii prison regulation nor the Due Process Clause itself afforded plaintiff a protected liberty interest that would entitle him to procedural protections and states, in its entirety: "Prisoners such as Conner, of course, retain other protection from arbitrary state action even within the expected conditions of confinement. They may invoke the First and Eighth Amendments and the Equal Protection Clause of the Fourteenth Amendment, where appropriate, and may draw upon internal prison grievance procedures and state judicial review where available." *Sandin*, 515 U.S. at 487, n. 11. Although I find the footnote a tenuous foundation for the rule that even absent a liberty (or property) interest, an equal protection claim may be stated, other courts have not been as reticent.

*6 (E.D. Mich. Dec. 20, 2006)(dismissing equal protection claim based on denial of reduction in sentence even if some inmates with similar convictions were granted early release without reference to earlier finding of no protected liberty interest), *citing Clapper v. Wisconsin Dep't of Corrections*, 946 F. Supp. 672, 680 (E.D. Wisc. 1996)("Mere inconsistencies or erroneous decisions in prison management [] do not by themselves constitute a cognizable equal protection claim.").

Since resolution of this legal issue is beyond this Report's scope, I thus suggest that under this framework, Plaintiff's claim of a violation of equal protection may proceed even absent a protected interest in visitation.

Turning to the substance of Plaintiffs' equal protection claim, the Equal Protection clause of the Fourteenth Amendment essentially requires that all persons similarly situated be treated alike and should not be subjected to intentional discrimination by state actors on account of race. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060(2000); *Knop v. Johnson*, 977 F.2d 996 (6th Cir. 1992). Here, Plaintiffs do not allege that the regulations or policies governing visitation distinguish between the races or interracial couples; instead, Plaintiffs assert that the race-neutral rules were enforced in a discriminatory manner against interracial couples. "To prove that a statute has been administered or enforced discriminatorily, more must be shown than the fact that a benefit was denied to one person while conferred on another." *Sylvia Development Corp. v. Calvert County, Md.*, 48 F.3d 810, 819 (4th Cir. 1995). "In order to prevail on an equal protection claim based upon the application of a facially neutral statute, [plaintiff] must establish that: (1) the plaintiff was treated differently than similarly situated persons; and (2) the defendant unequally applied the facially neutral statute for the purpose of discriminating against the plaintiff." *Strickland v. Alderman*, 74 F.3d 260, 264 (11th Cir. 1996).

To show that Defendants' conduct was for the purpose of discrimination, Plaintiff must show that race discrimination was a substantial consideration that made a difference in a defendant's decision to take adverse action against the plaintiff. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 229, 265-66, 97 S. Ct. 441, 50 L. Ed. 2d 427 (1977); *Copeland,* 57 F.3d at 480. Similarly, "[a] prison inmate cannot support a claim that his equal protection rights were violated simply by showing that other inmates were treated differently. He must establish that a government official intentionally discriminated against him because of his membership in a protected class." *Searcy v. Gardner*, No. 3:07-0361, 2008 WL 400424, *4 (M.D. Tenn. Feb. 11, 2008)(concluding that evidence of defendant's use of a racial epithet was insufficient to survive summary judgment); *accord, Anthony v. Weidman*, No. 07-CV-10467, 2007 WL 2080303, *1 (E.D. Mich. July 18, 2007)("To succeed on an equal protection challenge, a plaintiff must also demonstrate the existence of discriminatory intent; arbitrary application of prison rules without discriminatory intent is insufficient...[m]ere disparity of treatment is insufficient...[w]ithout specific or concrete factual allegations of discrimination."), citing *Jones v. White*, 992 F.2d 1548, 1573 (11th Cir. 1993), *McKlesky v. Kemp*, 481 U.S. 279, 292, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987), and *Gutierrez v. Lynch*, 826 F.2d 1524, 1538 (6th Cir. 1987).

Plaintiffs do not allege that any Defendants made racially derogatory or discriminatory comments let alone that Defendants admitted having racial animus, i.e., Plaintiffs offer no direct evidence of discrimination. (Dkt. 84, Butler Dep., Ex. 5 at 22, 27; Kanitz Dep., Ex. 6 at 21.) Defendants contend that Plaintiffs must submit "direct evidence of discrimination or racial animus." (Dkt. 92 at 4.) Defendants define direct evidence by reference to the Title VII case of

*Tepper v. Potter*, 505 F.3d 508, 516 (6th Cir. 2007).[9]  However, Defendants fail to mention that

the Court in *Tepper* recognizes that where direct evidence is lacking, Plaintiffs are not subject to

automatic dismissal but rather must present a prima facie case of discrimination. *Id.*  Therefore,

I find defense counsel's argument that intentional discrimination can only be proven with "direct"

evidence is not a fully accurate statement of the law.

Absent direct evidence of racial discrimination, Plaintiffs bear the initial burden of

production under the *McDonnell Douglas*[10] burden-shifting scheme. *Michael v. Caterpillar*

*Financial Services Corp.*, 496 F.3d 584, 593 (6th Cir. 2007).  If Plaintiffs meet this initial burden,

this "'creates a rebuttable presumption of discrimination, and the burden then shifts to the

defendant to articulate a legitimate, nondiscriminatory reason for taking the challenged [] action.'"

*Id.*, *quoting Carter v. University of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003).  If the Defendant

articulates a legitimate, nondiscriminatory reason, the burden of production shifts back to Plaintiffs

to "'prove that the proffered reason was actually a pretext to hide unlawful discrimination.'" *Id.*

Plaintiffs can establish that the proffered reason is pretextual if it "(1) has no basis in fact, (2) did

not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the

challenged conduct." *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir. 2000), *see also*

*Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991); *Young v. Sabbatine,* 238 F.3d

426, 2000 WL 1888672,*4 (6th Cir. Dec. 19, 2000).  Intentional discrimination may be inferred

when a prima facie case is established and there is evidence of pretext. *Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. 133, 147, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)("'The

---

[9] The substantive elements for race discrimination are the same under § 1983 and Title VII; therefore, Title VII cases are instructive here. *Black v. Columbus Public Schools*, 79 Fed. Appx. 735, 738 (6th Cir. Sept. 10, 1993); *Nelms v. Montgomery County Combined Health District*, 915 F.2d 1572,  1990 WL 153915, *6 (6th Cir. Oct. 12, 1990).

[10]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity may, together with the elements of the prima facie case, suffice to show intentional discrimination.'"), *quoting St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

The elements of a *prima facie* case of discrimination are:  (1) plaintiff is a member of a protected class, (2) he was subject to an adverse action, (3) he was treated less favorably than a similarly situated person outside of the protected class.  *Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir. 2000); *Johnson v. University of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000); *Mallory v. Noble Correctional Institute*, 45 Fed. Appx. 463, 471 (6th Cir. 2002).

Defendants contend that "[d]iscovery in this matter is now complete and Plaintiffs have not come forward with any evidence (other than Plaintiffs' speculation) to support their claim that any of the defendants' actions were more likely than not the result of racial or any other type of discrimination." (Dkt. 84 at 9.)  However, in their response, Plaintiffs have come forward with their own deposition testimony as well as affidavits from others.  Plaintiffs offer the affidavit of inmate Barry Porter who is black and whose girlfriend is white and who contends that he was wrongfully accused of inappropriately touching his girlfriend's breast during a visitation and that he was targeted because he is part of an interracial couple. (Dkt. 90, Ex. C, Porter Aff..)  Plaintiffs also offer the affidavit of fellow inmate Keith Lynn in which he attests that Defendant Cooke demonstrated "Racial Discrimination toward [him]self, as well as other Black Inmates."  (Dkt. 90, Ex. C, Lynn Aff..)  Plaintiffs offer an affidavit from inmate Nathan Bridges wherein he contends that there "is clearly a difference between the way black and white inmates are treated, when it comes to misconduct tickets and disciplinary action." (Dkt. 90, Ex. C, Bridges Aff..)  Plaintiffs also point to the deposition testimony of Richard Stapleton, the Administrator for the Office of Legal

Affairs for the Department of Corrections, where he indicated that he overturned the sexual misconduct charge against Plaintiffs because the decision had been based, in part, on the video and he did not believe that the video supported the hearing decision. (Dkt. 90, Ex. D at 27.)

As mentioned, Plaintiffs also proffer their own deposition testimony that they observed officers treating white inmates less harshly by giving them warnings when a visitor's hands approached or reached an area not to be touched during visitation (such as upper thigh or breast) or when one visitor actual gave an inmate a hickey, rather than interrupting visitation or filing misconducts as was done to Plaintiffs. (Dkt. 90, Ex. A, Butler Dep. at 36; Ex. B, Kanitz Dep. at 20, 24), and that approximately a dozen fellow inmates came to Plaintiff Butler with similar complaints regarding interracial couples having visitations terminated (Butler Dep. at 49.) Plaintiff Kanitz saw more than one officer give warnings for the same conduct but none of them were named in her deposition testimony. (Kanitz Dep. at 27.)

Defendants contend that the affidavits of Plaintiff Butler's fellow inmates contain mere conclusory allegations and that they do not point to any improper conduct on the part of these particular defendants so they are irrelevant. (Dkt. 92 at 3-4.) In addition, Defendants contend that the statements made in these affidavits would be inadmissible character evidence under FED. R. EVID. 404(a). (Dkt. 92 at 3-4.) Defendants are correct in noting that an affidavit must contain more than "conclusory allegations" because an affidavit must be "made on personal knowledge" and set forth "facts as would be admissible as evidence." FED. R. CIV. P. 56(e); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992)(affidavit containing "nothing more than rumors, conclusory allegations and subjective beliefs are wholly insufficient"). As currently worded, the affidavits of Keith Lynn and Nathan Bridges fail to state anything more than conclusory allegations (Lynn and Bridges) and rumors (Bridges). (Dkt. 90, Ex. C, Lynn Aff.; Bridges Aff..) However, I suggest that

evidence of other incidents of discrimination is not inadmissible character evidence because such evidence would be admissible to prove intent, FED. R. EVID. 404(b), and suggest that the affidavit of Barry Porter meets this threshold because it describes a particular incident of similar discriminatory conduct, i.e., an interracial couple wrongfully accused of inappropriate touching during a visitation. (Dkt. 90, Ex. C, Porter Aff..)  Therefore, I will consider only the affidavit of Barry Porter at this time.

After review of the evidence, I suggest that Plaintiffs have stated and supported a prima facie case of discrimination.  Plaintiff Butler is a member of a protected class, he was subject to an adverse action (misconduct and suspension of visitation privileges), and Plaintiffs have come forward with some evidence (their own deposition testimony and the affidavit of Barry Porter) that they were treated less favorably than similarly situated persons outside of the protected class. *Mitchell, supra.*  Defendants have proffered  legitimate, nondiscriminatory reasons for their actions.  *(Id.* ; Dkt. 84 at 10-11; Ex. 1, Dep. Osborne at 42-50; Ex. 2 , Dep. Cooke at 37-40.) Therefore, Plaintiffs need to provide sufficient evidence of pretext to survive summary judgment. *Id.*  I suggest that Plaintiffs have met this burden of production because they have shown that the action had no basis in fact by Plaintiffs' own testimony and the deposition testimony of Richard Stapleton indicating he overturned the sexual misconduct charge because he did not believe that the video supported the hearing decision. (Dkt. 90, Ex. D at 27.); *Dews, supra.*  I therefore suggest that they have provided sufficient evidence to allow a jury to infer intentional discrimination based on the prima facie case and evidence of pretext. *Reeves, supra; see Gray v. Bruce*, 26 Fed. Appx. 819, 2001 WL 1580940, *3-4 (10th Cir. Dec. 12, 2001)(reversing dismissal where Plaintiffs, who were a mixed-race couple, alleged equal protection violation based on suspension of visitation privileges for visitor's failure to submit to strip search where they alleged that Caucasian visitors

of Caucasian prisoners who did not submit to strip search either did not suffer suspension of visitation rights or were suspended for much less time); *Cox v. Mills*, No. 3:07CV00200SWW/JTR, 2008 WL 396103, *2 (E.D. Ark. Feb. 12, 2008)(finding cognizable claim, for screening purposes, stated where Plaintiff alleged that the defendants refused him contact visitations with his fiancee while allowing similarly situated African-American prisoners to have contact visitations with their girlfriends).

Accordingly, I suggest that summary judgment be denied as to all the remaining Defendants on this equal protection claim.

### 3.    Conspiracy

Plaintiffs allege the existence of unlawful conspiracies under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  In order to state a cause of action for conspiracy to violate constitutional rights under 42 U.S.C. § 1985(3), plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws;[11] and (3) an act in furtherance of that conspiracy (4) which causes injury to person or property, or a deprivation of a right or privilege of a United States citizen. *Collyer v. Darling*, 98 F.3d 211. 233 (6th Cir. 1996).  A plaintiff must also show some racial or other class-based invidiously discriminatory animus behind the conspirators' actions. *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1988).   A conspiracy claim under § 1983 more broadly covers conspiracies to deprive persons of constitutional rights including, but not limited to, equal protection.  "It is necessary for a § 1983 claim that a constitutional deprivation be alleged and proved." *Taylor v. City of Detroit*, 368 F. Supp. 2d 676, 693 (E.D. Mich. 2005), *citing Weberg v.*

---

[11]§ 1985 does not reach conspiracies to deny due process.  *Smith v. Oakland County Circuit Court*, 344 F. Supp. 2d 1030, 1070 (E.D. Mich. 2004).

*Franks*, 229 F.3d 514, 526 (6th Cir. 2000). Since I suggest that an equal protection claim has been sufficiently set forth to survive summary judgment, conspiracy claims under § 1985 and § 1983 are properly alleged and will be considered together.

"Rarely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire, [therefore,] circumstantial evidence may provide adequate proof of conspiracy." *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000). However, vague and conclusory allegations of conspiracy unsupported by material facts are insufficient to state a claim. *Gutierrez,* 826 F.2d at 1538. For summary judgment purposes, "the question whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can infer from the circumstances [that the alleged co-conspirators] had a meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives." *Robinson v. Township of Waterford*, 883 F.2d 75, 79 (6th Cir. 1989)(internal citations omitted).

In addition to the evidence discussed in the Order adopting the previous Report (Dkt. 43 at 16-19,) Plaintiff's offer their own deposition testimony. Plaintiff Kanitz's deposition testimony indicates that she believes that the guards talked about the fact that she and Plaintiff Butler are an interracial couple. Although she has no evidence of such discussions, she bases her conclusion on the actions of the guards. (Dkt. 90, Ex. B, Kanitz Dep. at 22.) Plaintiff Butler's belief in a pre-existing plan or agreement to discriminate against him was based on his observing that the furniture was moved and that Plaintiffs were moved from the "four-seater" so that the video camera was "right over" them to "get a better vantage point." (Butler Dep., Dkt. 84, Ex. 5 at 23; Dkt. 90, Ex. A at 35.) Plaintiff Butler further noted that the next couple to enter the visitation room was not moved from the "four-seater" as Plaintiffs were. (Dkt. 84, Butler Dep., Ex. 5 at 23.)

Defendant Frey argues that since he was not involved in the matter until he met with Plaintiff Butler on October 8, 2002, any agreement could not have included him. (Dkt. 84 at 15; Ex. 7 at 30.) Plaintiffs' evidentiary foundation for their belief that a conspiracy existed is based on the actions of the guards. However, as stated in the Order adopting the previous Report, Defendant Frey "viewed the video, which did not support Cooke and Osborne's claims of wrongdoing, but nonetheless forwarded it to the hearings officer." (Dkt. 43 at 18.) It is not necessary that a person join the conspiracy at its inception, every one who enters into a common design is responsible for acts previously or subsequently done in pursuance of the common goal. *American Express Travel Related Services Co., Inc. v. D & A Corp.*, No. CV-F-04-6737 OWW/TAG, 2007 WL 3217565, *29 (E.D. Cal. Oct. 29, 2007); *accord, Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 632 (5th Cir. 1999). Consequently, I suggest that the timing of Defendant Frey's entering the alleged conspiracy is not significant and would not alter the Court's earlier conclusion that there is sufficient evidence of a conspiracy to violate Plaintiff Butler's equal protection rights to survive summary judgment. (Dkt. 43 at 18-19.); *Robinson, supra.*

Accordingly, I suggest that summary judgment be denied as to all the remaining Defendants on this conspiracy claim.

### 4.       Qualified Immunity

Defendants assert that they are entitled to qualified immunity. (Dkt. 19 at 20-22.) The Supreme Court has explained that, pursuant to the defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The rationale underlying the doctrine is that "an official could

not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts. 'If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002), *quoting Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When raised after discovery, "the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

The Supreme Court has recently clarified the interplay between qualified immunity and summary judgment:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts. As we have emphasized, '[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."' '[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.' When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of the events is so utterly discredited by the record that no

reasonable jury could have believed him [so] [t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott v. Harris*, ___ U.S. ___, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).

According to this recent Supreme Court precedent, courts must weave the summary judgment standard into each step of the qualified immunity analysis and must not proceed to step two unless a genuine issue of fact exists under step one under the qualified immunity analysis. The Sixth Circuit has delineated the following steps to the qualified immunity analysis:

The first inquiry is whether the [p]laintiff has shown a violation of a constitutionally protected right; the second inquiry is whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated the right; and the third inquiry is 'whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of clearly established rights.'

*Tucker v. City of Richmond, Ky,* 388 F.3d 216, 219 (6th Cir. 2005), quoting *Higgason v. Stephens*, 288 F.3d 868, 878 (6th Cir. 2002). In doing so, the court must only consider the facts known to the officers at the time the conduct was undertaken. *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005).

In the instant case, I suggest that Plaintiffs have sufficiently alleged a violation of constitutional rights and I further suggest that the rights of equal protection and to be free from conspiracies aimed a depriving persons of equal protection under the law were clearly established at the time such that Defendants' conduct was objectively unreasonable. *Tucker, supra.* Therefore, I suggest that the remaining Defendants are not entitled to qualified immunity as to the suggested remaining claims of a violation of equal protection and conspiracy.

**5.      State law claims**

Defendants' final argument is that this Court should decline to exercise jurisdiction over the remaining state law claims since there are no federal claims on which to proceed. In light of my recommendation that several of the federal claims should survive this motion, I suggest that Defendants' argument with respect to the pendent state claims fails.

## III. <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

 s/ *Charles E. Binder*     
CHARLES E. BINDER
Dated: March 5, 2008                    United States Magistrate Judge

## <u>CERTIFICATION</u>

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Cori E. Barkman and Thomas R. Warnicke, and served on U.S. District Judge Lawson in the traditional manner.

Date: March 5, 2008          By____s/Patricia T. Morris_____
                                        Law Clerk to Magistrate Judge Binder